```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
```
JUDITH INCARNATO,

                Plaintiff,        04-CV-6599T

     v.                             **DECISION
                                       and ORDER**

TOPS FREINDLY MARKETS, LLC.,

                Defendant.
_____

## INTRODUCTION

Plaintiff Judith Incarnato, ("Incarnato"), brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), (codified at 42 U.S.C. § 2000(e), et seq.) and the Age Discrimination in Employment Act of 1967, ("ADEA")(codified at 29 U.S.C. § 621 et. seq.); claiming that defendant Tops Friendly Markets, LLC, ("Tops"), discriminated against her on the basis of her age, and engaged in retaliatory conduct against her. Incarnato, who is 65 years of age, claims that she was harassed by a supervisor and terminated from her employment because of her age.

Defendant denies plaintiff's allegations and moves for summary judgment dismissing plaintiff's claims on grounds that plaintiff has failed to state a prima facie case of discrimination or retaliation, and that even if plaintiff has stated a prima facie case, she has failed to rebut the defendant's legitimate, non-discriminatory reason for terminating her employment.  For the

reasons set forth below, defendants' motion for summary judgment is granted, and plaintiff's complaint is dismissed.

BACKGROUND

Plaintiff Judith Incarnato began working for the defendant Tops Friendly Markets as a clerk in the General Merchandise section of store number 419, located in Fairport, New York. Plaintiff worked in that department as a part-time employee throughout her employment with Tops.

Sometime during the Spring of 2003, in either April, May, or June, plaintiff contends that she was verbally berated in front of customers and fellow employees by the Manager of the General Merchandise Department, Andrew Zollweg ("Zollweg"). Though plaintiff recalls the incident, and recalls reporting the incident to a union representative, she does not recall what events led to the incident nor what Zollweg allegedly said to her during the incident. See Deposition Transcript of Judith Incarnato at p. 102.

In August 2003, plaintiff contends that Zollweg harmed her by failing to properly handle a vacation request. Plaintiff alleges that she requested vacation time, and requested that she be paid on a certain date for her vacation days. She states that although Zollweg approved that vacation time and pay date, she did not receive her pay the date expected because Zollweg failed to properly process the payment. Zollweg contends that he lost

plaintiff's paper work and submitted the vacation request with the incorrect pay date. He claims that despite incorrectly filing the paperwork, plaintiff appeared at the store on the pay date she had originally requested and received a portion of her pay, which was paid directly out of petty cash.

In February, 2004, plaintiff requested vacation time for a period covering the week of February 22, through February 28, 2004. Because Zollweg was out on medical leave, the request was made to Teresa Kimber, the store's Grocery Manager who was supervising the General Merchandise section while Zollweg was on leave. Kimber, however, did not approve the request on grounds that she herself would soon be on vacation, and therefore, she was not the supervisor who would be writing the work schedule for the week of February 22. Thereafter, Incarnato submitted her vacation request to Debbie Brewer, an Assistant Customer Service Manager who was acting as store 419's payroll clerk. According to the defendant, Brewer did not have the authority to grant or deny plaintiff's request, as only the Department Head Manager had the authority to grant or deny vacation requests. In addition to requesting time off, plaintiff, on the back of the vacation request form, indicated that she would no longer be available to work 16 hours per week, and instead, would be available to work only 8 hours per week, from 8 to 12 on Tuesdays and Wednesdays.

On or about February 20, 2004, Zollweg, who was still on medical leave, returned to store 419 to prepare the work schedule for the week of February 22, 2004.  According to the defendant, although Zollweg was not aware of plaintiff's request for time off, he did learn that she had requested to work only on Tuesdays and Wednesdays, and accordingly, he scheduled her to work on Tuesday, February 24, and Wednesday, February 25, 2004.  Zollweg contends that because he had not been in the office, he did not know whether or not plaintiff had discussed her requested change in hours with another manager.

According to the plaintiff, she did not report to work on February 24 or 25 because she had not been notified that her vacation request had not been approved.  Because plaintiff had failed to report to work for two consecutive days, Cheryl Emerling, the Manager of store 419, terminated Incarnato's employment pursuant to the company's excessive absenteeism policy.  Under the terms of that policy, any employee who, without an excused absence, failed to appear for work on two consecutive work dates was deemed to have voluntarily quit.  See Exhibit A to the January 27, 2006 Affidavit of Cheryl Emerling.

Plaintiff learned of the termination of her employment on February 26, 2004, when she arrived at the store for non-work related reasons.  While still at the store, Incarnato discussed the situation with Emerling, and explained that she believed that her

vacation had been approved. Emerling reviewed Incarnato's paperwork, and when it was discovered that plaintiff's vacation had not been approved, and that plaintiff had requested a change in hours, Emerling offered to reinstate Incarnato's employment to a position that could accommodate plaintiff's requested change. Emerling explained that the general merchandise department could not accommodate plaintiff's requested hours, and therefore, if Incarnato wanted to continue working at Tops, she would have to work as a cashier, and would be required to be available for work 16 hours per week. Incarnato refused Emerling's offer on grounds that she "did not know how to make change" and did not want the increased stress and responsibility of a cashier position.

Incarnato, through her local union, pursued a grievance relating to her termination from employment. On March 2, 2004, Incarnato, along with her Union representative Anthony Cuchiarale, ("Cuchiarale") met with Emerling to discuss the matter. Cuchiarale incorrectly alleged that Tops' policy required three consecutive unreported absences from work prior to being fired for excessive absenteeism, and claimed that Incarnato's employment had been wrongfully terminated. In fact, Tops' policy allowed an employee to be fired after two consecutive unexcused absences. Believing that she may have incorrectly interpreted Tops' policy, Emerling offered to reinstate Incarnato to her position in the general merchandise department, provided she agreed to be available for

work at least 16 hours per week. Incarnato refused this offer on grounds that she wanted to work only eight hours per week. Indeed, Incarnato refused this offer on at least three separate occasions during the grievance process. Unbeknownst to Tops, Incarnato did not want to commit to work more than 8 hours per week because she had taken a part-time position at the Finger Lakes Racetrack. Nevertheless, Incarnato wanted to keep her employment with Tops, albeit for only 8 hours per week, so she could retain her Tops' employee benefits.

Plaintiff filed a written charge of age discrimination with the Equal Employment Opportunity Commission on or about July 13, 2004. On September 22, 2004, after conducting an investigation into plaintiff's claims and finding no evidence of discrimination, the EEOC issued plaintiff a Notice of Determination and Right to Sue letter. Thereafter, plaintiff commenced this action on December 6, 2004.

DISCUSSION

I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law."  When considering a motion for summary judgment, all inferences and ambiguities must be resolved in favor of the party against whom summary judgment is sought.  R.B. Ventures, Ltd. v. Shane, 112 F.3d 54 (2nd Cir. 1997). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate.  Annis v. County of Westchester, 136 F.3d 239, 247 (2nd Cir. 1998).

    II.  Plaintiff's Title VII and Retaliation Claims

Although plaintiff alleges violations of Title VII in her Complaint, and claims that she was retaliated against in violation of her rights, plaintiff has failed to set forth any legal or factual basis in support of those claims, and has failed to oppose defendant's motion for summary judgment with respect to those claims.  Accordingly, defendant's motion for summary judgment with respect to plaintiff's Title VII and retaliation claims is granted.

    III. Plaintiff's Age Discrimination Claims

To establish a prima facie case of discrimination under the ADEA, a plaintiff must demonstrate that; (1) she is a member of a protected group; (2) she was qualified for the position she held; and (3) she was discharged under circumstances giving rise to an inference of age discrimination. McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Promisel v. First American Artificial

Flowers, 943 F.2d 251, 259 (2d Cir. 1991), cert. denied, 502 U.S. 1060 (1992). Although the Second Circuit Court of Appeals has stated that "the burden that must be met by an employment discrimination plaintiff to survive a summary judgment motion at the *prima facie* stage is *de minimis*," Tomka v. Seiler Corp., 66 F.3d at 1308 (internal citations omitted), it has also noted that "[a] jury cannot infer discrimination from thin air." Norton v. Sams Club, 145 F.3d 114 (2nd Cir.), cert. denied 119 S.Ct. 511 (1998).

Once a plaintiff has established a prima facie case of discrimination, the defendant must articulate a legitimate, nondiscriminatory rationale for its actions. The burden then shifts to the plaintiff to demonstrate that the employer's stated rationale is merely a pretext for discrimination. McDonnell-Douglas Corp., 411 U.S. 792,(1973)

   A. Plaintiff has failed to state a prima facie case of Age Discrimination.

In the instant case, plaintiff has failed to establish that she was qualified for her position, or that her employment was terminated under circumstances giving rise to an inference of discrimination.

   1. Plaintiff was not qualified for the Position of Part-time clerk

As stated above, to state a prima facie case of age discrimination under the ADEA, a plaintiff must establish, inter alia, that she was qualified for the position she held or sought.

In the instant case, plaintiff has failed to establish that she was qualified for the position of part-time clerk, because she has failed to establish that she was available to work 16 hours per week, a requirement of the job she sought. It is uncontroverted that Tops requires part-time employees to be available to work 16 hours per week. While this policy does not guarantee that part-time employees will be scheduled to work 16 hours per week, Tops, through its collective bargaining agreement with its Union, has made it a condition of employment that part-time employees be available to work no less than 16 hours per week.

It is further uncontroverted that in February, 2004, plaintiff sought to change her availability to 8 hours per week. It is apparent from the record that plaintiff had taken another part-time job, and as a result, could not offer 16 hours per week of availability to Tops. Because plaintiff could not fulfill the conditions of employment for a part-time merchandise clerk, she was not qualified for that position, and therefor can not, as a matter of law, state a claim for unlawful termination from that position by reason of discrimination.

Plaintiff alleges that Tops allowed employees to work less than 16 hours per week, and therefore she should have been allowed to work 8 hours per week while still retaining her full benefit package. As stated above, however, Tops policy does not require part-time employees to <u>work</u> 16 hours per week, but instead requires

part-time employees to be <u>available</u> to work 16 hours per week. Plaintiff has failed to allege or establish that part-time employees under the age of 40 were allowed to have availability of less than 16 hours per-week, and the defendant has offered uncontradicted evidence that no part-time employee of the store at the time of plaintiff's employment was allowed to have availability of less than 16 hours. Moreover, while plaintiff correctly alleges that an employee may request permission to have availability of less than 16 hours per week, it is uncontroverted that plaintiff never requested such permission and that such permission was never granted. Because plaintiff could not satisfy the conditions of employment for a part-time employee, I find that she has failed to establish that she was qualified for her position.

    2.   Plaintiff has failed to establish that she was terminated <u>from her employment</u>.

To establish a prima facie case of age discrimination with respect to employment, a plaintiff must establish that an adverse employment action was taken against her. While termination from employment certainly constitutes an adverse employment action, where the termination is rescinded, and the plaintiff is offered re-employment under the same conditions as she previously enjoyed, the plaintiff cannot establish that her employment was terminated. <u>See</u> <u>Ticalli v. Roman Catholic Diocese of Brooklyn</u>, 41 F.Supp.2d 249, 264 (E.D.N.Y. 1999)(plaintiff's whose termination of employment was retracted by employer could not establish that an

adverse employment action had been taken against her) aff'd without opinion 201 F.3d 432 (2nd Cir. 1999).

In the instant case, on the day plaintiff learned of her termination, she was offered an equivalent position as a cashier[1], provided she agreed to be available to work 16 hours per week. Plaintiff however, objected to working as a cashier and refused to be available for 16 hours per week. Thereafter, within one-week of her termination from employment, plaintiff, during a grievance proceeding at which her union representative was present, was offered her original clerk position, at her same rate of pay with her same benefits, provided she agreed to be available to work 16 hours per week. Plaintiff again refused to make her self available for 16 hours per week, and so was not re-employed by Tops. According to the defendant, plaintiff was offered her old position two more times after she initially declined it, and each time she refused to take the position because she refused to be available for work for more than eight hours per week. Because plaintiff was offered her former position under her former working conditions and with her same pay and benefits, I find that plaintiff is unable to establish that an adverse employment action was taken against her.

---

[1] Tops considers clerk and cashiers positions to be equivalent. Both positions receive the same pay and benefits.

    3.    Plaintiff has failed to establish that an adverse action was taken against her under conditions giving rise to an <u>inference of discrimination</u>.

Even if Incarnato could establish that she was qualified for her position, or that she suffered an adverse employment action, she has failed to establish that the termination of her employment occurred under circumstances giving rise to an inference of discrimination. The <u>sole</u> evidence offered by the plaintiff in support of her contention that her termination from employment was discriminatory is the fact that five different employees, four of whom were under the age of forty, assumed the hours that she had been working. While normally evidence that the job of a person in a protected class was assumed by a person outside of the protected class may raise an inference of discrimination, in the instant case, the uncontroverted facts demonstrate that the defendant did not hire a new employee who was under the age of 40 to take over plaintiff's position, but instead distributed the hours that plaintiff had been assigned to work to five separate employees who collectively had the availability to cover plaintiff's previously scheduled hours. Moreover, the person who assumed most of the hours was herself a member of the protected class of workers over the age of 40. Accordingly, in this instance, I find the fact that plaintiff's hours were assumed by and distributed amongst five employees, four of whom were under the age of forty, fails to establish that plaintiff's termination from employment occurred

under circumstances giving rise to an inference of discrimination.

> B.  Defendant has set forth a legitimate non-discriminatory reason for terminating plaintiff's employment.

Even assuming that plaintiff has stated a prima facie case of discrimination based on age, race, national origin, or disability, the defendant has met its burden of setting forth a legitimate, non-discriminatory reason for firing the plaintiff. It is uncontroverted that the plaintiff's employment was terminated as a result of her failing to report for two consecutive scheduled work shifts in violation of the company's written absenteeism policy. While plaintiff contends that she did not report to work because she mistakenly believed that she had been granted vacation time, the fact that she fired for violating the company's policy states a legitimate, non-discriminatory reason for firing the plaintiff.

> C.  Plaintiff has failed to rebut Defendant's legitimate, non-discriminatory reason for terminating the plaintiff's position.

Once the defendant has stated a legitimate, non-discriminatory reason for discharging an employee, the plaintiff bears the burden of demonstrating that the defendant's reason is pretextual, and that discrimination is the real reason for the discharge. On a motion for summary judgment, a plaintiff rebutting the defendant's position may not simply rely on "some" evidence of pretext, but instead must produce "sufficient evidence to support a rational

finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." <u>Woroski v. Nashua Corp.</u>, 31 F.3d 105, 110 (2nd Cir. 1994).

In this case, plaintiff has failed to set forth any evidence from which a trier of fact could establish that the reason plaintiff was fired was pretextual, and that the real reason she was fired was because she was over the age of 40. Instead, the record reveals that plaintiff was fired because she had failed to report to work for two consecutive shifts, and that once it was learned that plaintiff had failed to report only because she had mistakenly believed that she had been granted vacation leave, she was offered an equivalent job with the same pay and benefits. Thereafter, on three separate occasions, she was offered her previous employment under the previous conditions of employment, and plaintiff refused to accept. This evidence suggests that plaintiff's termination was not the result of discrimination, and plaintiff has failed to produce sufficient evidence that could support a rational finding that she had been discriminated against. I therefore grant defendant's motion for summary judgment, and dismiss plaintiff's discrimination claims.

CONCLUSION

For the reasons set forth above, I grant defendant's motion for summary judgment, and dismiss plaintiff's complaint with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

                                        S/ Michael A. Telesca
                                        _____
                                          MICHAEL A. TELESCA
                                     United States District Judge

Dated:    Rochester, New York
          May 12, 2006